UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TAMÁS NAGY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 17-10613-LTS |
| JUDIT NÁDAY et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION TO TAKE JUDICIAL NOTICE (DOC. NO. 105), MOTIONS TO DISMISS FOR LACK OF JURISDICTION (DOC. NOS. 119, 121), MOTION FOR LEAVE TO AMEND PLAINTIFF'S OPPOSITION (DOC. NO. 131) AND MOTION FOR ENTRY OF DEFAULT (DOC. NO. 134)

March 19, 2020

SOROKIN, J.

Pro se Plaintiff Tamás Nagy has struggled for almost three years to effectuate service on the numerous defendants in this lawsuit arising out of a child custody dispute that occurred in Hungary. See, e.g., Doc. No. 32 (order on motion for extension of time to complete service), Doc. No. 46 (order to show cause as to "why this case should not be dismissed for lack of service"), Doc. No. 53 (order requiring Nagy to provide the status of serving defendants or risk dismissal with prejudice). Recently, this Court ordered Nagy to show cause as to why the Court should not dismiss this case on the ground of forum non conveniens, given that the remaining defendants in this case are all citizens and residents of Hungary, and all causes of action that Nagy alleges are civil tort claims arising out of conduct that occurred in Hungary. Doc No. 102

at 3-4. Nagy responded, Doc. No. 105, and twelve of the remaining defendants[1] moved to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), Doc. Nos. 119, 121.

First, while Nagy's Complaint purports to sue the defendant foreign officials individually, see Doc. No. 1, the actions at issue in this case were all performed by these defendants—variously administrators, government staff, and municipal officials in Hungarian government offices—while acting within the scope of their official capacities. See generally Doc. No. 120-1 (Declaration of István György describing the structure of local Hungarian government and various defendants' roles in the child protection administrative proceedings at issue in Nagy's complaint).

Given these circumstances, Defendants István Simiscz, Térez Tóth, Ágnes Seben Hanuska, Viktória Dovak, Mária Cecilia Kovács, Mihály Szabó, Ildikó Lakatos, Ágnes Juzané Szabó, Józsefné Simon, Erika Cosma, Judit Gallóné Nagy, and Ildikó Bleszkánné Kis are entitled to foreign official immunity from suit. See Eliahu v. Jewish Agency for Israel, 919 F.3d 709, 713 (2d Cir.), cert. denied sub nom. Weisskopf v. Jewish Agency for Israel, 140 S. Ct. 380 (2019) ("Even assuming the officials' challenged conduct was improper under [Hungarian] law,

---

[1] Ten of these defendants—István Simiscz, Térez Tóth, Ágnes Seben Hanuska, Viktória Dovak, Mária Cecilia Kovács, Mihály Szabó, Ildikó Lakatos, Ágnes Juzané Szabó, Józsefné Simon, and Erika Cosma (all of whom are government officials with the Budapest Government Office)—filed a joint motion to dismiss for lack of jurisdiction, Doc. No. 119. Two additional defendants—Judit Gallóné Nagy and Ildikó Bleszkánné Kis (respectively, the Head of the Department of the Municipality of Budapest III District, Mayor's Office, Social Services Department, and the Head of Office of Óbuda Family Counseling and Child Protection Center)—filed a separate, but nearly identical, motion to dismiss for lack of jurisdiction, Doc. No. 112. Three additional defendants who remain in the case—Márta Dobi, Eszter Kocsisné Hodosi, and Ilona Tamás—have not responded. Finally, Ágnes Jávorszky, Nagy's ex-wife and the defendant against whom most of Nagy's claims are lodged, has sent three letters to the Court, Doc. Nos. 19, 73, 101, asking the Court to "to close the case in the absence of appropriate jurisdiction." Doc. No. 101 at 1.

there is no doubt that the conduct was official in nature."); id. at 712 (holding that "[t]he district court properly dismissed all claims against the [foreign officials] for lack of subject matter jurisdiction because, as foreign government officials acting their official capacity, they are entitled to immunity.").

Accordingly, these defendants' motions to dismiss for lack of subject matter jurisdiction (Doc. Nos. 119, 121) are ALLOWED.  For the same reasons, the court sua sponte DISMISSES Defendants Márta Dobi, Eszter Kocsisné Hodosi, and Ilona Tamás for lack of subject matter jurisdiction.  See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction."). Additionally, the Court concurs that any attempt by Nagy to amend his Complaint to substitute Hungarian government entities as parties would not cure the Court's lack of subject matter jurisdiction over a dispute concerning conduct performed by Hungarian government officials acting in their official capacities.  See Fagot Rodriguez v. Republic of Costa Rica, 297 F.3d 1, 8-9 (1st Cir. 2002) (holding that where foreign government conduct "is a matter of choice" or "involves an element of judgment," immunity is not waived under the Foreign Sovereign Immunity Act's tortious activity exception, 28 U.S.C. § 1605(a)(5)).  In any event, this lawsuit was filed in April 2017 and concerns alleged unlawful action that occurred in 2013 and 2014. See, e.g., Doc. No. 1 ¶ 16.  Nagy has, at various times, sought the Court's leave to file amended complaints, requests which have been uniformly denied.  See Doc. No. 56 (denying a request to amend the Complaint to add additional parties); Doc. No. 74 (denying motion to amend the

Complaint where Nagy did not attach the proposed amended complaint to his filing); Doc. No. 88 (denying motion to amend). The time for amending the pleadings is long past.

One final matter remains: the propriety of this Court adjudicating the remaining claims against Defendant Ágnes Jávorszky. Jávorszky stands in different shoes from the other defendants. She is Nagy's ex-spouse and the record before the Court does not support the conclusion that she undertook the actions alleged in the Complaint in any sort of official capacity. See generally Doc. No. 1.

As the Court previously noted, under the federal change of venue statute, "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, "in cases where a sister federal court is not necessarily a more convenient forum, and where an alternative forum exists abroad, a federal court may also rely on the ground of forum non conveniens as a means for dismissal." Doc. No. 102 at 2 (citing American Dredging Co. v. Miller, 510 U.S. 443, 447–48 (1994). In such cases, the court undertakes a two-step inquiry: it determines (1) whether an adequate alternative forum exists, and (2) whether certain private and public interest factors, when weighed, favor the trial being in said alternative forum; after completing this analysis, the district court can proceed to dismiss the case, essentially "den[ying] audience to a case on the merits." Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 432 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)).

Here, both factors militate toward dismissal. Where, as here, the defendant is a Hungarian citizen and is amenable to service in Hungary, and the plaintiff will not be "deprived

of all remedies or treated unfairly,"[2] Kamel v. Hill-Rom Co., 108 F.3d 799, 803 (7th Cir. 1997), Hungarian courts are an adequate alternative forum. See Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 103 (1st Cir. 2009) (holding that "Israel is an adequate alternative forum because its courts address the sort of breach of contract claim asserted in this case, and because [the defendant], an Israeli citizen is amenable to service there."); Fischer v. Magyar Allamvasutak Zrt., 777 F.3d 847, 867 (7th Cir. 2015) (holding that where "all [of the] parties [are] subject to jurisdiction in Hungary, it counts as an available forum"). As to the public and private factors at issue in this dispute: (1) the claims lodged against Defendant Jávorszky arise entirely out of conduct that occurred in Hungary and, as to a critical mass of the claims alleged in Nagy's Complaint (including slander, conspiracy, and negligence), would likely be governed by Hungarian law, see Snofrost AB v. Hakansson, 353 F. Supp. 3d 99, 108 (D. Mass. 2018) (noting that Massachusetts courts apply the "functional approach to choice of law" and determining that Swedish law would likely apply to a dispute where Sweden had the "most significant relationship" with the parties and conduct at issue); (2) a critical mass of the evidence and foreseeable witnesses are in Hungary, see Howe v. Goldcorp Invest., Ltd., 946 F.2d 944, 951 (1st Cir.1991) (holding that the balance of conveniences favor with "unusual strength" Canadian defendants seeking a Canadian forum because "[t]he relevant events surrounding both plaintiff's misrepresentation and breach of fiduciary duty claims took place in Canada, not in the United

---

[2] Nagy has asked the Court to take judicial notice of information purporting to demonstrate that the Hungarian judicial system is generally corrupt. Doc. No. 105. That request is DENIED. Federal courts have explicitly held that "generalized, anecdotal complaints of corruption are not enough for a federal court to declare that an EU nation's legal system is so corrupt that it can't serve as an adequate forum." Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund, 589 F.3d 417, 421 (7th Cir. 2009); see also In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 499 (2d Cir. 2002) (refusing "to pass value judgments on the adequacy of justice and the integrity of Ukraine's judicial system on the basis of no more than . . . bare denunciations and sweeping generalizations").

States"); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257–58 (1981) (holding that because "[a] large proportion of the relevant evidence is located in Great Britain" it was not unreasonable for the district court to conclude "that fewer evidentiary problems would be posed if the trial were held in Scotland"); and (3) Hungary has a far greater interest in adjudicating a dispute about conduct that largely occurred within its judicial and administrative apparatuses, see Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1354 (1st Cir. 1992) (observing that there is a "local interest in having localized controversies decided at home") (quoting Piper Aircraft, 454 U.S. at 241 n.6)). In these circumstances, "[t]he private and public factors overwhelmingly point to [Hungary] as being the most convenient and appropriate forum for [Nagy's] action." Snofrost AB, 353 F. Supp. 3d 99 at 110.

Accordingly, the Court DISMISSES the action as to Defendant Jávorszky. Nagy's motion to take judicial notice of certain information (Doc. No. 105) is DENIED for reasons already stated, see supra n.2. The pending motions to dismiss for lack of jurisdiction (Doc. Nos. 119, 121) are ALLOWED for reasons already stated. The pending motions for leave to amend plaintiff's opposition (Doc. No. 131) and for entry of default (Doc. No. 134) are DENIED AS MOOT in light of the foregoing. A judgment of dismissal shall enter.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge